IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERRI BROKAW, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:07-CV-0015-O |
| | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT; MICHAEL HINOJOSA, | § | |
| SUPERINTENDENT, DISD; CELSO | § | |
| MARTINEZ; DAVID RASTELLINI; TROY | § | |
| L. COLEMAN; and RONALD PEACE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following: Defendants' Motion for Summary Judgment[1] and Brief

In Support ("Mot.") (Doc. #47); Defendants' Appendix in Support of Motion for Summary

Judgment ("Defs. App.") (Doc. #48); Plaintiff's Response in Opposition to Defendants' Motion for

Summary Judgment ("Pl. Resp.") (Doc. #65); Plaintiff's Brief in Opposition to Defendants' Motion

for Summary Judgment ("Pl. Resp. Br.") (Doc. #66); Appendix to Plaintiff's Response and Brief in

Opposition to Defendants' Motion for Summary Judgment ("Pl. App."); and Defendants' Reply in

Support of Motion for Summary Judgment ("Reply") (Doc. #72).  Having reviewed the motion,

Plaintiff's response, Defendants' reply, the summary judgment evidence, and the applicable law, the

Court finds that Defendants' motion should be and is hereby GRANTED.

## I.  BACKGROUND

Plaintiff, Sherri Brokaw ("Plaintiff") brings this suit pursuant to 42 U.S.C. §1983 against

---

[1]  This motion is brought by Defendants Dallas Independent School District ("DISD"), Michael Hinojosa,
David Rastellini, Troy L. Coleman, and Ronald Peace.

1

Defendants, Dallas Independent School District ("DISD"), Michael Hinojosa, Celso Martinez, David Rastellini, Troy L. Coleman, and Ronald Peace alleging violations of her civil rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, and a state law claim for defamation.[2] (Compl. at 7-8). As relief for her civil rights claims, Plaintiff seeks an order from this Court that (1) requires Defendants to provide her with notice of any allegations of misconduct, and thereafter, provide her a full and fair name-clearing hearing, and (2) enjoins Defendants from infringing on her free speech rights and from taking any retaliatory action against Plaintiff during the remaining period of her contract. (Compl. 9-10). With respect to her defamation claim, Plaintiff seeks actual damages, punitive damages, pre-judgment and post judgment interest, attorney's fees and costs. (Compl. at 10).

The relevant facts pertaining to Plaintiff's claims are undisputed. Plaintiff was employed with Defendant DISD from February 22, 1999 until August 31, 2007, in the position of Director of Financial Control and Activity Funds. (Pl. App. at 2). Beginning on or about August 1999, Plaintiff's job duties included oversight of the PCard program, which allowed DISD employees to make expenditures using a credit card rather than using a traditional requisition approval process. (Pl. App. at 3). Initially, the PCard program was instituted to allow employees to use the credit card for small purchases, but in early 2000, the Texas Comptroller performed a review of DISD and recommended that it move all purchases of $1,000 and less to the PCard program. (*Id.*). DISD implemented this suggestion, as well as several other policies regarding use of the credit card, which were published in a PCard manual. (Pl. App. at 4).

---

[2] Plaintiff's pendent state law claim is brought solely against Defendant Celso Martinez. (Compl. at 8). Since the pending motion for summary judgment is brought by defendants other than Mr. Martinez, Plaintiff's defamation claim against Defendant Martinez is not addressed herein.

On or about January 2006, the Dallas Morning News began an investigation of alleged misuse of the PCard program by DISD employees. (Pl. App. at 4). The Dallas Morning News submitted several public information requests to DISD requesting files related to the PCard spending program. (*Id.*). Plaintiff was assigned the task of investigating and responding to the public information requests made by the Dallas Morning News. (Pl. App. at 5). Plaintiff's own investigation revealed possible misuse of the PCard by Gloria Orapello and she reported all her findings to Defendants Rastellini and Peace. (*Id.*). On or about June 26, 2006, Plaintiff was interviewed by a reporter with the Dallas Morning News regarding DISD's PCard program. (Pl. App. at 6).

In July 2006, the Dallas Morning News began to publish a series of news articles that contained serious allegations of misconduct and abuse of DISD's PCard program. (Pl. App. at 6). In response, DISD decided to suspend the PCard program and hire outside investigators to conduct a thorough internal investigation. (*Id.*). On July 18, 2006, Defendants sent Plaintiff a letter notifying her that she was being placed on paid administrative leave pending the internal investigation of the PCard program. (Pl. App. at 6-7). On July 20, 2006, the Dallas Morning News published an article discussing DISD actions, and quoting several remarks made by Defendant Celso Martinez. (Pl. App. at 7, 28-29). As they pertained to Plaintiff, the totality of Defendant Martinez' comments read as follows:

> Sherri Brokaw, head of the credit card program . . . [was] suspended with pay pending results of the investigation. . . . These [individuals] are pretty much the ones that floated up to the surface pretty quickly . . . There are questions of competence. She should have caught problems with the credit card program.

(Pl. App. at 28-29).

Plaintiff retained counsel soon after being placed on paid administrative leave. On or about

August 11, 2006, Plaintiff, through her counsel, requested that DISD provide her with details of the alleged misconduct supporting the decision to place her on paid administrative leave, and allow her the opportunity to clear her name. (Pl. App. at 8). On or about December 11, 2006, DISD officials requested that Plaintiff appear for an interview regarding the PCard program. (Pl. App. at 8). Plaintiff refused to appear and again demanded details of the alleged misconduct and an opportunity to clear her name. (*Id.*). Plaintiff made a third demand requesting that DISD provide her with information regarding the alleged misconduct. (Pl. App. at 9). DISD formally responded to these demands in writing explaining that no hearing would be provided with regard to the decision to place her on paid administrative leave or the comments made by Defendant Celso Martinez. (*Id.*).

On January 4, 2007, Plaintiff filed this suit alleging violations of her civil rights. *See* Doc. No. 1 (3:07-CV-0015-O) (N.D. Tex. Jan. 4, 2007). Meanwhile, DISD officials were still requesting that Plaintiff appear for an interview in relation to the internal investigation of the PCard program. (Pl. App. at 10-12). Plaintiff ultimately appeared for an interview accompanied by her counsel on January 19, 2007. (Pl. App. at 12). The independent investigators completed their investigation and filed their report with DISD on or about February 5, 2007. (Pl. App. at 13, Ex. 7). On February 20, 2007, Defendant Darrell Coleman sent Plaintiff a letter notifying her that it was his recommendation that her employment be terminated. (Pl. App. at 13, 75). This letter gave four specific reasons for the recommended termination:

1. Failure to discharge duties and responsibilities related to the PCard Program;

2. Failure to follow Procedures, Policies, Guidelines, and/or Directives related to the district Procurement Card Program;

3. Failure to exercise good judgment in discharging your duty to account for district resources; and

4. Failure to comply with district policy, procedures, and directives to cooperate during an administrative investigation.

(Pl. App. at 75). This letter further informed Plaintiff that she had a right to appeal and detailed the procedures for appealing the recommendation to terminate her employment. (*Id.*). Plaintiff timely appealed, and again requested more particular details regarding the allegations of misconduct and a name-clearing hearing. (Pl. App. at 13). DISD granted Plaintiff's request for a public name-clearing hearing and held such a hearing over 4 days, beginning on June 11, 2007, and continuing through July 16, 17, 24, 2007. (Def. App. at 1, 72, 142, 207). The hearing was held before a Judicial Panel consisting of Dr. Thomas Kelchner, Mr. Bernard Cousins and Mr. Rene Ronquillo. (Def. App. at 1-223). Plaintiff was represented by counsel at this hearing and was allowed to cross-examine witnesses, call her own witnesses, and testify on her own behalf. (*Id.*). Before the Judicial Panel issued a decision, Plaintiff was notified in a letter dated August 31, 2007, that DISD was withdrawing its recommendation to terminate her employment. (Pl. App. at 128). Additionally, her one-year employment contract expired on August 31, 2007 without renewal. (*Id.*). Ultimately, the Judicial Panel issued a decision finding that DISD had not met its burden to show Plaintiff's employment should be terminated based on the cited allegations of misconduct. (Pl. App. at 117-122). Given that DISD had voluntarily withdrawn its recommendation to terminate Plaintiff's employment, and that Plaintiff's employment contract had expired without renewal, the Judicial Panel decision was moot.

Plaintiff and Defendants then proceeded with their dispute over these issues in this litigation. On May 5, 2008, Defendants filed their motion for summary judgment regarding Plaintiff's civil rights claims against them. For purposes of clarity, the Court offers an introductory explanation regarding its analysis of Defendants' motion for summary judgment as it relates to Plaintiff's due

process claims. As pleaded in her complaint, Plaintiff's due process claims arise from Defendants' decision to place her on paid administrative leave, alleged stigmatizing, false statements made by Defendant Celso Martinez to the Dallas Morning News, and Defendants refusal to provide her a name-clearing hearing. Defendants' motion for summary judgment primarily argues that Plaintiff's claims as pleaded do not establish a constitutional violation. Defendants also make arguments addressing issues related to Plaintiff's ultimate termination of employment, which occurred after Plaintiff's complaint was filed. Plaintiff never amended her complaint to allege violations of her constitutional rights arising from the termination of her employment. Nevertheless, given that Plaintiff's employment terminated while the case was pending, Defendants alternative arguments, and the fact that the parties' bring forth summary judgment evidence consisting of all the events related to her employment occurring before and after Plaintiff filed her complaint, the Court finds it appropriate to address all the issues and make alternative findings. *See Rodriguez v. Cruz*, 296 F. Supp. 2d 726, 733 (S.D. Tex. 2003) (addressing alternate bases for granting summary judgment).

## II. LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions,

admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "[T]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied.

*Id.* at 250.

### III. SUMMARY JUDGMENT EVIDENCE

Plaintiff objects to the summary judgment affidavit of Thomas Kelcher on the grounds that his statements are conclusory and not competent summary judgment evidence. (Resp. at 2). Because the Court does not rely on Mr. Kelcher's affidavit in resolving Defendants' motion for summary judgment, Plaintiff's objections are overruled as moot. *See Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence that is not considered by the Court in deciding a motion for summary judgment).

### IV. ANALYSIS

Plaintiff alleges that she was deprived of her constitutional rights in violation of 42 U.S.C. §1983. Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show (1) she has been deprived of a right "secured by the Constitution and the laws of the United States" and (2) that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.,* 180 F.3d 234, 241 (5th Cir. 1999). Thus, a threshold inquiry in a § 1983 cause of action is whether plaintiff has alleged a violation of a constitutional right or of federal law. *Neal v. Brim,* 506 F.2d 6, 9 (5th Cir. 1975).

With regard to Defendants DISD, Michael Hinojosa, David Rastellini, Troy L. Coleman, and Ronald Peace (collectively "Defendants"), Plaintiff's complaint alleges §1983 claims based on violations of the Due Process Clause of the Fourteenth Amendment and a violation of the First

Amendment. (Compl. at 7-8). Specifically, Plaintiff complains she was denied procedural due process under the Fourteenth Amendment when Defendants placed her on paid administrative leave amid "false, stigmatizing charges" without informing her of the allegations of misconduct, and refusing to provide a name-clearing hearing. (*Id.*). Plaintiff also complains she was denied substantive due process under the Fourteenth Amendment when she was denied a name-clearing hearing. (Compl. at 8). Further, Plaintiff pleads Defendants violated her First Amendment rights in failing to provide a name-clearing hearing and by prohibiting her from speaking publicly "to clear her good name." (*Id.*).

Defendants move for summary judgment on the grounds that Plaintiff cannot establish a denial of procedural due process because (1) a person's reputation, without more, is not constitutionally protected, (2) she received adequate notice of the allegations of misconduct, and (3) she was provided a hearing prior to termination of her employment where she was allowed to testify and cross-examine witnesses. (Mot. at 1). Further, Defendants contend that Plaintiff cannot maintain her substantive due process claim because the right to a name-clearing hearing is procedural, not substantive. (Mot. at 2). Finally, Defendants assert that Plaintiff cannot show a violation of her First Amendment rights because the record shows Plaintiff was expressly informed she could speak to the press, and she did in fact make statements to the press. (*Id.*). Plaintiff responds that Defendants' motion should be denied because there are genuine issues of material fact that preclude summary judgment. (Resp. at 1-2). These issues are now ripe for determination.

### A.     Fourteenth Amendment Due Process Claims

The Fourteenth Amendment of the United States Constitution provides, in pertinent part, "nor shall any State deprive any person of life, liberty, or property without due process of law." U.

S. CONST. amend. XIV. To invoke Fourteenth Amendment protections, a plaintiff must show deprivation of a property, life, or liberty interest. *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 251 (5th Cir. 1984). Whether the facts and events pleaded in Plaintiff's complaint constitute a violation of her civil rights under the Due Process Clause of the Fourteenth Amendment is a question of law for the Court to decide. *Hatton v. Wicks*, 744 F.2d 501, 503 (5th Cir. 1984) (holding civil rights claim alleging a violation of due process under the Fourteenth Amendment is a question of law requiring the district court to interpret and apply the Constitution).

In her complaint, Plaintiff alleges that Defendants deprived her of both a property and liberty interest without due process of law. (Compl. at 7-8). The Court will therefore first examine whether Plaintiff was deprived of a property interest without due process, and then examine whether Plaintiff was deprived of a liberty interest without due process.

## 1.    <u>Property Interest</u>

Public employees, such as Plaintiff, have a property interest in their employment when there exists a legitimate right to continued employment. *Am. Fed'n of Gov't Employees v. Stetson*, 640 F.2d 642, 645 (5th Cir. 1982); *see also Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Absent a property interest in continued employment, there exists no right to due process prior to termination of employment. *Roth*, 408 U.S. at 578; *see also Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 548 (5th Cir. 1989). "The Due Process Clause of the Fourteenth Amendment does not create a property interest in government employment." *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997); *see also Roth*, 408 U.S. at 577. Instead, the existence of a property interest is determined by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). "Texas is an employment-at-will state. Absent a specific contract to the contrary, employment contracts are

terminable at will by either party." *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993).

Here, Plaintiff does not specifically plead a property interest in continued employment in her complaint, but rather makes a vague assertion Defendants deprived her of her right to be free from "arbitrary deprivation of property." (*See generally* Compl.). Further, Plaintiff argues in her response that she "was a non-educator, contract employee, with the DISD, and as such she had a property right in her continued employment expectations, at least for the duration of her one-year contract." (Pl. Resp. Br. at 2). Defendants do not address whether Plaintiff had a protected property right in her employment. Instead, they argue even assuming Plaintiff had a protected liberty or property interest, Defendants complied with the requisite procedural safeguards guaranteed under the Due Process Clause. (Mot. at 7).

The Court notes that the summary judgment evidence indicates that Plaintiff had an employment contract with DISD that expired on August 31, 2007. (Pl. App. at 128). The Court cannot determine whether this contract created a property interest in continued employment because it has not been included in the summary judgment evidence. (*See generally* Pl. App & Def. App.). Nonetheless, Defendants have presented arguments that assume Plaintiff had a protected property right, and Plaintiff has responded based on the same assumption. Thus, the Court will assume, without deciding, that Plaintiff had a property interest arising from her one-year employment contract. When a public employee has a constitutionally recognized property interest in continued employment, she is entitled to substantive and procedural due process protections before termination of her employment. *Thompson v. Bass*, 616 F.2d 1259, 1264 (5th Cir. 1980). Accordingly, the Court will address whether Plaintiff was deprived of either substantive or procedural due process.

a. **Substantive Due Process**

Defendants argue that Plaintiff's substantive due process claim fails as a matter of law because Plaintiff's allegations do not show Defendants violated her substantive due process rights. (Mot. at 12). Specifically, Defendants contend substantive due process does not provide a right to a name-clearing hearing. (*Id.*). Plaintiff did not address this ground in her response to Defendants' motion for summary judgment. (*See generally* Pl. Resp. Br.).

The Fifth Circuit has held that in order to maintain a substantive due process claim in the context of public employment, a plaintiff must plead and prove: (1) a property interest in continued employment, and (2) that the employer's termination of her employment was arbitrary and capricious. *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993). Substantive due process "requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998). As an initial matter, the Court notes that often in cases involving violations of the due process clause the primary question is whether Plaintiff's employment is a property interest, but this case presents the less frequent question whether Plaintiff's employer, DISD, *deprived* her of a property interest. In other words, whether Plaintiff has pleaded a termination of employment.

In her complaint, Plaintiff pleads only a denial of substantive due process based on Defendants' arbitrary decision to place her on paid administrative leave without providing her notice of the allegations of misconduct or providing her a name-clearing hearing. (Compl. at 7-8). Plaintiff has not cited any legal authority that supports a finding that Defendants' decision to place her on paid administrative leave constitutes a termination of her employment, *i.e.*, a deprivation of a

protected property interest.

Federal courts have held that a person's placement on administrative leave does not amount to a deprivation of a protected property interest. *Richards v. City of Weatherford*, 145 F. Supp. 2d 786, 790-791 (N.D. Tex. 2001) (holding municipal judge did not have due process protections when he was placed on administrative leave with pay); *Edwards v. California Univ. of Pa.*, 156 F.3d 488, 492 (3rd Cir. 1998) (holding that suspension with pay and resulting stigma to reputation did not deprive plaintiff of protected property interest); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-546 (1985) (noting that a public employer can avoid a due process problem by suspending a public employee with pay). Thus, Plaintiff's substantive due process claim, as pleaded in her complaint, is lacking a key element.

In her response to Defendants' motion for summary judgment, Plaintiff appears to augment her due process claims by alleging that DISD's attempts to terminate her employment, and thereafter declining to re-employ her constitute a discharge. (Pl. Resp. Br. at 12 citing Pl. App. at 129-130). Although Plaintiff had an opportunity to amend her complaint and plead facts occurring after she filed her initial complaint, she voluntarily withdrew her motion for leave to amend and elected to stand on her claims as pleaded in her original complaint. *See* Doc. No. 39 (3:07-CV-0015-O) (N.D. Tex. April 24, 2008). Accordingly, as pleaded, Plaintiff's substantive due process claim is based on Defendants' decision to place her on paid administrative leave without providing notice of the allegations of misconduct and refusing to provide her a name-clearing hearing.

The Court finds Defendants' decision to place Plaintiff on paid administrative leave does not give rise to a substantive due process claim. Plaintiff has not introduced any evidence which raises a genuine issue of material fact regarding whether Defendants' decisions to place her on paid

administrative leave was a deprivation of a protected property right or that the decision was arbitrary and capricious. In fact, as previously noted, Plaintiff appears to have abandoned her substantive due process claim by not coming forward with evidence in response to Defendants' motion for summary judgment. Accordingly, Plaintiff's substantive due process claim fails.

Further, viewing Plaintiff's complaint, arguments, and evidence in the light most favorable to her claims, the Court finds Plaintiff's allegations regarding Defendants' refusal to provide her a name-clearing hearing are pleaded in support of both her procedural due process claim, and substantive due process claim. Because Plaintiff's claim of a denial of substantive due process is factually interwoven with her allegations that Defendants violated her rights to be free of false, stigmatizing charges, and refused to provide her a name-clearing hearing, the Court concludes that her substantive due process claim is nothing more than a re-cast procedural due process claim. *Schaper v. City of Huntsville*, 813 F.2d 709, 718 (5th Cir. 1987) (holding that in the context of a property interest in employment created by state law, a claim of substantive due process is often nothing more than a regurgitation of a procedural due process claim). The Court will next examine whether Plaintiff was deprived of procedural due process protections.

### b.     Procedural Due Process

Procedural due process entitles a public employee with an established property right in his employment to (1) notice of the charges against him, (2) an explanation of the employer's evidence, and (3) an opportunity to present the employee's position. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). To invoke a right to procedural due process, Plaintiff must again show the deprivation of a protected property interest.[3] *Roth*, 408 U.S. at 571. As previously discussed,

---

[3] The deprivation of a protected liberty interest may also give rise to procedural due process protections and will be further discussed in Part IV, A.2.

in this case, Plaintiff filed suit shortly after Defendants decided to place her on paid administrative leave, and before Defendants recommended termination of her employment and before her contract expired without renewal. *See* Doc. No. 1 (3:07-CV-0015-O) (N.D. Tex. Jan. 4, 2007); (Pl. App. at 62, 75, 128). Plaintiff's claim of deprivations of procedural due process is therefore based on Defendants' decision to place her on paid administrative leave without notice of the allegations or an opportunity to be heard. As previously noted, because an employment decision to place an employee on paid administrative leave does not amount to deprivation of a protected property interest, Plaintiff cannot establish a right to procedural due process protections.[4] *Richards*, 145 F. Supp. 2d at 790.

Alternatively, the Court finds that even considering Defendants' later decision to recommend termination of Plaintiff's employment and not renew her employment, there are no genuine issues of material fact that preclude summary judgment.[5] Plaintiff admits that Defendants provided her with notice of their recommendation to terminate her employment on February 20, 2007. (Pl. App. at 13, 75-76). This letter detailed the reasons for the recommendation to terminate her employment, and further provided her with information regarding the procedures to appeal the recommendation. (Pl. App. at 75). Plaintiff did avail herself of the opportunity to appeal the recommended termination and requested a public hearing. (Pl. App. at 78-80). Defendants convened a public hearing before a neutral panel of DISD Council members, namely Mr. Thomas Kelchner, Mr. Rene

---

[4] The Court notes that Defendants' motion for summary judgment is based on the alternative argument that Plaintiff's procedural due process claim fails because she was afforded all the procedural safeguards required under the Due Process Clause. (Mot. at 8). Accordingly, the Court will address this issue alternatively.

[5] The evidence shows that Defendants ultimately decided not to renew Plaintiff's employment contract. (Pl. App. at 128). This decision occurred eight (8) months after Plaintiff filed her complaint.

Ronquillo, Mr. Bernard Cousin. (Def. App. at 1, 72, 142, 207). "The hearing was conducted as an open hearing with access by the public allowed, in accordance with [Plaintiff's] approved request for a due process, name-clearing hearing." (Pl. App. at 121). The hearing commenced on June 11, 2007 and continued through July 16, 17, 24, 2007. (Def. App. at 1, 72, 142, 207). At this hearing, Plaintiff was permitted to cross-examine witnesses, call witnesses, and testify on her own behalf. (Def. App. at 1-223). In fact, Plaintiff's testimony lasted approximately six (6) hours. (Defs. App. at 118-191). Ultimately, the hearing officers determined that DISD did not carry its burden to show that Plaintiff's employment should be terminated based on the alleged misconduct. (Pl. App. at 117-122). Prior to issuance of the hearing panel's decision, however, DISD withdrew its recommendation to terminate Plaintiff's employment. (Pl. App. at 128).

This undisputed evidence conclusively establishes that Plaintiff was afforded adequate procedural due process before her employment contract expired.[6] *See Johnson v. Houston Indep. Sch. Dist.*, 930 F. Supp. 276, 287 (S.D. Tex. 1996) ("The root requirement of procedural due process is that an individual be given notice and an opportunity to be heard before he or she is deprived of a property interest." (citations omitted)). Because Defendants afforded Plaintiff with adequate procedural due process, she cannot show a deprivation of a protected property interest, and her §1983 claim fails as a matter of law. *Id*. Accordingly, Defendants are entitled to summary judgment on this ground.

---

[6] Plaintiff's employment contract expired on August 31, 2007, and because of a reorganization, her contract was not renewed. (Def. App. at 250; Pl. App. at 128-129). Plaintiff remained on paid administrative leave through August 31, 2007. (Pl. App. at 128).

## 2. <u>Liberty Interest</u>

"The liberty interest protected by the due process clause encompasses an individual's freedom to work and earn a living." *Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983). Thus, even without a constitutionally protected *property* interest, a plaintiff may still have a constitutionally protected *liberty* interest. To state a successful claim for deprivation of a liberty interest, an employee must show that she was terminated without notice and an opportunity to be heard for reasons that were false, stigmatizing, and published. *Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir. 1979). To satisfy due process requirements, an employer must simply afford an employee with notice of the termination charges and an opportunity to tell her side of the story. *Rosenstein v. City of Dallas, Tex.*, 876 F.2d 392, 395 (5th Cir. 1989). Accordingly, at the summary judgment stage, the Court must determine whether Plaintiff has sufficiently alleged a constitutionally protected liberty interest and if so, whether she was afforded adequate procedural due process.

Defendants assert three alternative grounds for why summary judgment is proper on Plaintiff's liberty interest claim: (1) damage to reputation is not a protected liberty interest; (2) Plaintiff was not discharged without notice and an opportunity to be heard; and (3) the alleged stigmatizing charges do not rise to the level of a protected liberty interest.[7] (Mot. at 7-12; Reply at 9-12). Plaintiff responds that she has alleged more than damage to her reputation; and that the public hearing held in connection with her appeal of the recommended termination was not a name-

---

[7] The Court notes that Defendants assert the ground regarding whether the stigmatizing charges are sufficient to raise a liberty interest in their reply. (Reply at 9). While normally the Court does not consider grounds raised in a reply, here, Defendants' alternative grounds were made in direct response to Plaintiff's "new" claim that the deprivation of her liberty interests arose from the nonrenewal of her employment contract, which was asserted for the first time in her response to Defendants' motion for summary judgment. Because the Court is addressing Plaintiff's "new" claim in the alternative, it will also address Defendants' response to Plaintiff's allegations alternatively.

clearing hearing. (Pl. Resp. Br. at 8-13). The Court addresses each of Defendants' grounds in turn.

The parties agree that to establish a deprivation of a protected liberty interest, Plaintiff must show: "(1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not provided notice or an opportunity to be heard prior to her discharge; (5) that the charges were made public; (6) that she requested a hearing to clear her name; and (7) that the employer refused her request for a hearing." *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000). Moreover, the Fifth Circuit has held that "[r]eputation alone is not a constitutionally protected interest." *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981).

## 1.    Damage to Reputation

Relying on the "stigma-plus" test set forth by the Supreme Court in *Paul v. Davis*,[8] Plaintiff contends her liberty interest claim survives summary judgment because it is based on more than damage to her reputation. (Pl. Resp. Br. at 8-13). In *Paul*, the Court found that a public employee who had appeared in a public flyer titled "active shoplifters," but who had not been discharged from employment could not maintain a claim for violation of the Due Process clause of the Fourteenth Amendment. 424 U.S. at 712. The Court clarified its long line of decisions recognizing "liberty" or "property" interests, and held that injury to a public employee's reputation without loss of an additional tangible interest such as loss of employment is insufficient to invoke the protections of the Due Process Clause. *Id.* at 706, 710.

As previously discussed, Plaintiff's liberty interest claim as pleaded in her complaint is based solely on Defendants' decision to place her on paid administrative leave and the statements made

---

[8] 424 U.S. 693 (1976).

by Defendant Martinez to the *Dallas Morning News* reported on July 20, 2006. (Compl. at 7-8; Pl. Resp. Br. at 3). Based on these facts, the Court finds because Plaintiff remained employed, the only claim of "stigma-plus" derives from the injury to her reputation, which is not a constitutionally cognizable claim. *Paul*, 424 U.S. at 712. For these reasons, Plaintiff cannot establish that she was entitled to due process protections, *i.e.*, notice and an opportunity to be heard, in connection with Defendants' to place her on paid administrative leave. *See Loudermill*, 470 U.S. at 544-45 (recognizing that an employer can avoid the requirements imposed by the due process clause by suspending the employee with pay); *Richards*, 145 F. Supp. 2d at 790-91 (holding municipal judge's placement on paid administrative leave did not give rise to due process protections). Because Plaintiff cannot establish a deprivation of a protected liberty interest, *i.e.*, that she was discharged amid false, stigmatizing charges, Defendants are entitled to summary judgment.

## 2. <u>Recommended Termination/Nonrenewal of Employment Contract</u>

In her response, Plaintiff argues that Defendants mischaracterize the nature of her claim and that she actually claims "that the DISD, in the process of attempting to terminate her employment and thereafter in declining to re-employ her, imposed on her a stigma or other disability that foreclosed her freedom to take advantage of other employment opportunities." (Pl. Resp. Br. at 9). Defendants object that Plaintiff's arguments are broader than her stigmatization claim as pleaded in her complaint. (Reply at 1, 5, 8). The Court finds that Plaintiff's arguments in her response do assert a different basis for her liberty interest claim. Notwithstanding their objections based on Plaintiff's failure to plead that her employment was terminated, Defendants contend summary judgment is proper because Plaintiff was provided all the procedural safeguards required under the Fourteenth Amendment. (Reply at 9). The Court will therefore consider whether Plaintiff can show

a deprivation of a liberty interest arising from Defendants' recommendation of termination or nonrenewal of her employment contract.

As previously discussed, Plaintiff does not dispute that Defendants provided her with adequate notice of the reasons for recommending termination of her employment, and convened a public hearing that allowed her to rebut the allegations of misconduct in her management of the PCard program. Rather, Plaintiff argues this hearing was not the constitutionally required name-clearing hearing because (1) it was an appeal of the termination recommendation, and (2) she did not have an opportunity to compel the attendance of witnesses. (Pl. Resp. Br. at 4). Plaintiff has not cited any authority to support her arguments that the due process clause requires a special name-clearing hearing where the person is allowed to compel the attendance of witnesses. Contrary to Plaintiff's position, the Supreme Court has held that due process simply requires a public hearing or opportunity to clear the person's name. *Roth*, 408 U.S. at 573, n.12. Further, the Supreme Court and the Fifth Circuit have held that an employer does not need to revisit its decision to discharge the employee; it must only afford the employee an opportunity to tell her side of the story. *Roth*, 408 U.S. at 573 n.12; *Rosenstein*, 873 F.2d at 395.

The Court finds based on the undisputed summary judgment evidence that Plaintiff was afforded notice and a meaningful opportunity to clear her name regarding the charges of mismanagement of the PCard program. (Def. App. at 1-123). Plaintiff has not shown that the hearing provided through DISD's appeal procedures was so deficient that it amounted to a deprivation of due process. Plaintiff's broad and unsupported arguments that she did not have meaningful hearing because she could not compel witnesses do not establish a constitutional deficiency. Accordingly, Plaintiff cannot show she was deprived of a protected liberty interest

without due process of law. For these reasons, Court finds that even if Plaintiff could show deprivation of a protected liberty interest due to the nonrenewal of her employment contract and the remarks published in the Dallas Morning News article, her claim fails because she was provided an adequate name-clearing hearing to address the misconduct prior to the expiration of her employment contract. *See Rosenstein*, 876 F.2d at 395 ("public officials do not act improperly in publicly disclosing charges against discharged employees, but they must thereafter afford procedural due process to the person charged").

### 3. Stigmatizing Charges

Finally, the Court finds the stigmatizing statements at issue are not the type of seriously damaging statements that would support a finding of a liberty interest. *Roth*, 408 U.S. at 573. Plaintiff points to comments made by Defendant Celso Martinez as published in a Dallas Morning News article, which as they pertain to Plaintiff read:

> Sherri Brokaw, head of the credit card program . . . [was] suspended with pay pending results of the investigation. . . . These [individuals] are pretty much the ones that floated up to the surface pretty quickly. . . . There are questions of competence. She should have caught problems with the credit card program.

(Pl. App. at 28-29). At most, these comments imply that Plaintiff was not performing her job adequately. The Fifth Circuit has held that the type of stigmatizing comments required to support a finding of a liberty interest include "dismissals for dishonesty, for lying on a job application, for having committed a serious felony, for manifest racism, for serious mental illness, and for lack of intellectual ability." *Felder v. Hobby*, 199 F.3d 439, at *5 (5th Cir. Oct. 20, 1999). Indeed, the Fifth Circuit has consistently held that statements are not sufficiently stigmatizing unless they rise to the level of a "badge of infamy, public scorn, or the like." *Ball v. Bd. of Trustees of Kerrville Indep. Sch. Dist.*, 584 F.2d 684, 685 (5th Cir. 1978). Accordingly, Plaintiff's claim that her liberty interests

were violated because Defendants made public comments about her abilities to manage the PCard program does not present a cognizable claim for relief under 42 U.S.C. §1983.

Further, while statements questioning her competency to manage the PCard program were made and published in a Dallas Morning News article on July 20, 2006, such statements, standing alone, do not give rise to procedural due process safeguards. *See Codd v. Velger*, 429 U.S. 624, 628 (1977) (holding the due process clause requires a hearing only when "the employer creates and disseminate a false and defamatory impression about the employee *in connection with* his termination" (emphasis added)). The undisputed evidence shows the Defendant Martinez's statement were made and published on July 20, 2006, in the context of DISD's decision to place Plaintiff on paid administrative leave pending an internal investigation of the PCard program. (Pl. App. at 28-29). Defendants' decision to recommend termination of Plaintiff's employment occurred seven months later on February 20, 2007, and the decision to not renew her contract occurred thirteen months later on August 31, 2007. (Pl. App. at 75, 128). The evidence establishes that the alleged stigmatizing remarks were not made in connection with the termination of Plaintiff's employment. In other words, because the stigmatizing statements are not connected to Defendants' subsequent decisions to recommend termination or to not renew her employment contract, plaintiff has not shown the required nexus between the discharge and the false, stigmatizing statements. *Huffstutler*, 607 F.2d at 1093 (holding that Plaintiff was not entitled to name-clearing hearing where the evidence showed a lack of nexus between the stigmatizing statements and the termination of employment).

In sum, the Court finds that Defendants are entitled to summary judgment because Plaintiff has failed to raise a genuine issue of material fact that she was deprived of a liberty interest protected

by the Due Process Clause of the Fourteenth Amendment.

###### B.      First Amendment Free Speech Claims.

Plaintiff also complains that her First Amendment rights were infringed when Defendants prohibited her from talking with the press. (Compl. at 8). Defendants move for summary judgment on this claim on the grounds that Plaintiff has not shown a violation of her First Amendment rights because she did in fact speak publicly, and even if Defendants had impeded her rights, the proposed content of her speech is not a matter of public concern. (Mot. at 13-14). Plaintiff's brief response asserts that upon being placed on paid administrative leave she was told by unnamed persons not to discuss the PCard program with the media. (Pl. Resp. Br. at 15).

The Court first reviews whether there are genuine issues of material fact that Defendants actually restricted Plaintiff's speech. Viewing the evidence as a whole, the Court finds that Defendants expressly informed Plaintiff that she was free to speak publicly about any matters concerning the investigation of the PCard program. (Pl. App. at 72). Further, the Court finds that Plaintiff did speak publicly to the press regarding her role in managing the PCard program. (Pl. App at 6, Def. App. at 244-45). These facts tend to show that Defendants did not prohibit Plaintiff from publicly speaking about the PCard program. The only evidence Plaintiff brings forth is her own sworn statement where she states "[o]fficers, agents, employees and attorneys for Defendant DISD then instructed me that I was not to talk to the media or any other person outside the DISD about the allegations of potential misconduct." (Pl. App. at 7). This conclusory statement fails to provide specific facts regarding who allegedly infringed on her free speech rights and in what context. "Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary

judgment." *Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992). Accordingly the Court finds that Plaintiff's affidavit is insufficient to create a genuine issue of material fact as to whether Defendants infringed on her free speech rights. The summary judgment evidence shows Plaintiff did speak to the press regarding the PCard program, thus negating her claim that Defendants restricted her speech.

Further, the Court finds that even if Plaintiff could show Defendants impeded her rights to speak, she cannot show a constitutional violation because her proposed speech did not involve matters of public concern. Two United States Supreme Court cases provide the constitutional guidelines regarding censorship of a public employee's right to free speech. *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968); *United States v. National Treasury Employees Union* 115 S.Ct. 1003 (1995). "First, the district court must determine whether the State's action or policy restricts the speech of its employees on matters of public concern." *Hoover v. Morales*, 164 F.3d 221, 225 (5th Cir. 1998). "If so, then the district court must weigh the interest of the employee in freedom of expression and his audience's legitimate need for access to the information against the government's interest 'as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (citations). Thus, the primary question the court must resolve is whether Defendants restricted Plaintiff's speech on a matter of public concern.

Stated differently, the Court must determine whether there is a genuine issue of fact regarding whether Plaintiff's speech involved a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *see also Charles v. Grief*, 522 F.3d 508, 512-513 (5th Cir. 2008) (stating that if a court determines that an employee is not speaking in his or her role as an employee, but

rather as a citizen, the court must then assess whether the employee's speech addresses a matter of public concern). "Whether the speech at issue relates to a matter of public concern is a question of law to be resolved by the court." *Markos v. City of Atlanta, Tex.*, 364 F.3d 567, 570 (5th Cir. 2004) (quoting *Thomkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994). Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community. *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004). Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement. *Charles*, 522 F.3d at 514.

Courts have found that where the content of an employee's speech pertains to internal disputes and working conditions, speech will not ordinarily involve matters of public concern. *Alexander,* 392 F.3d at 142. The Court does not presume that all matters which transpire within a government office are of public concern, and the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs. *Commc'n Workers of Am. v. Ector County Hosp. Dist.*, 467 F.3d 427, 438 (5th Cir. 2006). However, the existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern. *Modica v. Taylor*, 465 F.3d 174, 180 (5th Cir. 2006). It is well-established that speech relating to official misconduct or racial discrimination almost always involves matters of public concern. *See Charles*, 522 F.3d at 514; *Markos*, 364 F.3d at 570-71 (where court found content of plaintiff's statements to a reporter regarding police misconduct was of mixed public and private character in situation where these statements also exonerated plaintiff's own reputation); *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999) (speech concerning police misconduct is public in context); *Wilson v. UT Health*

*Ctr.*, 973 F.2d 1263, 1269 (5th Cir. 1992) (content of reports of sexual harassment perpetrated by members at the university health center's police force was of great public concern).

Here, Plaintiff alleged in her complaint that Defendants infringed her free speech rights by prohibiting her from speaking publicly "to clear her good name." (Compl. at 8). In her response, Plaintiff argues that she "was prohibited from discussing the merits, pros and cons, about the disbanded PCard program amidst a media feeding frenzy." (Pl. Resp. Br. at 15). Defendants object to Plaintiff's attempt to recast her First Amendment claim because she never pleaded these new allegations. (Def. Reply at 13). Assuming, without deciding, that Plaintiff properly alleges that Defendants abridged her right to speak as a public citizen about the pros and cons of PCard program, the Court finds that Plaintiff cannot establish a First Amendment violation.

Reviewing the comments Plaintiff made regarding the PCard program as published in a Dallas Morning News article on January 5, 2007, the Court finds that the content of Plaintiff's speech is fairly characterized as mixed in character, with the private character predominating. *See Markos*, 364 F.3d at 570-571 (finding plaintiff's speech reveals that it was "mixed" in content). Stated differently, Plaintiff's statements did not address a matter of public concern.

While the misuse of credit cards was a matter of public concern, the Court finds that Plaintiff's speech was aimed at publicly stating that she did a good job managing the PCard program. (Def. App. at 244-45) ("If people were doing wrong [with their credit cards, we were not aware of it . . . By no means do I think we did a bad job with that department."). Such speech does not involve allegations of official misconduct or abuse of the level that courts have generally found to be a matter of public concern, such as where there is an alleged misuse of public fund or corruption. *See Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006) (where court found content of

speech alleging, among other things, misuse of public funds and erroneous reporting of the number of inspections to the state legislature weighed in favor of First Amendment protection); *Charles*, 522 F.3d at 514 (finding a public concern where a plaintiff's e-mail focused on misconduct by Commission officials including misuse of public funds); *Commc'n Workers of Am.*, 467 F.3d at 438 (court found content of buttons indicating union membership did not involve a matter of public concern, observing that the buttons did not imply defendant was guilty of any wrongdoing or breach of trust). Ultimately, Plaintiff's primary purpose in speaking publicly about the PCard program was to "clear her good name." (Pl. Resp. Br. at 15). Accordingly, the Court finds that based on the evidence presented, the content of Plaintiff's speech is of mixed private and public character, but that Plaintiff's private interest in her own rights and working conditions predominates.

Accordingly, the Court finds that, when viewing the evidence presented in the light most favorable to Plaintiff, there is no genuine issue of material fact that Plaintiff's speech does not involve a matter of public concern. Plaintiff has failed to raise an issue as to whether her First Amendment claim alleges a violation of a constitutional right or of federal law, as required for a claim pursuant to 42 U.S.C. § 1983. Accordingly, Defendants are also entitled to summary judgment on Plaintiff's First Amendment.

## V. CONCLUSION

Based on the foregoing reasons, the Court hereby GRANTS Defendants' motion for summary judgment (Doc. #47) and DISMISSES Plaintiff's §1983 claims against Defendants DISD, Michael Hinojosa, David Rastellini, Troy L. Coleman, and Ronald Peace.

**SO ORDERED** on this 11th day of September 2008.

Reed O'Connor
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**